23, 7, 28, 23, 12, 35, Black v. Dain. Good morning, Your Honors. Michael Shulman on behalf of the appellants, Sarah and Jacob Black, it's a pleasure to be here. May it please the court. This case has implications that go far beyond the direct parties. It is something that the amici have filed and have disclosed to this court has implications for the guardian conservatorship system nationwide as well as in Colorado more specifically. They've indicated that this will have an impact. You want us to hold that the Denver probate court is corrupt? No. Can we really do that? No, I'm not asking you to do that. The appellants are asking to reverse the district court and allow them to go to trial on damages. This court is not able to interfere with the decisions of either the Denver probate court or with the court of appeals, but this court can and should find that damages are possible and likely and probable here so that there could be a trial on the damages before a jury. What the district court did... What are the plaintiff's damages? The plaintiff's damages are damages to the trusts, both trusts. The Supplemental Needs Trust, the SNT, suffered damages. The most obvious one was because Trustee Dane attempted to overturn the disclaimer, to reverse the disclaimer, and Judge Amman even recognized that in page 33 of her decision. The Colorado courts have held that Bernard stole the money. The money doesn't belong in the trust. The money belongs in the conservatorship. Those are the findings of the Colorado courts, correct? In part, but not actually as to the stealing of the SNT. There's no finding that Bernard stole any money of the SNT. The Colorado courts have held that the money belongs in the conservatorship, correct? And they found that, and the district court... That's correct, right? Yes, it is. And if that's the case, are you asking us to second guess that? Wouldn't we have to second guess that to find that there were damages here? No, not at all. And the reason is because the black letter law, the law that is clear and really undisputed, and Judge Amman went at great lengths to explain how the breach of the fiduciary duties by Dane, in fact, were clear and were misconduct. And the misconduct of trustee Dane was, in the most clear way, was to overturn, attempt to overturn the disclaimer. In other words, to take the assets out of the trust, that he was a trustee. So in response to Judge Chin's first question then, the damages would be the entire amount of the funding of the SNT trust? No, it would not be that. It would be the monies that were taken out of the SNT by Dane, with the disbursements for services. For services and the payment of all the staff that now have become creditors. The whole staff, the guardianship, the conservatorship, all the lawyers and accountants and guardians who have been hired have claims against this, which is a damage to the trust. The trust will have to pay that. I understand the theory. Can you take a step back and explain what the status is of the POD disclaimer? So as I understand it, there was some back and forth in Colorado and then the Denver on appeal, or they're called Denver Court and then the Colorado Appeals Court. But then in 2023, it was vacated. Is that right? The disclaimer was vacated? Or do I have that backwards? Well, there's efforts by the DPC to just to vacate the disclaimer, overturn the disclaimer. Yeah, I just want to know what the status is now after the 2023 action. Yes, and that's now on appeal. Okay, so it's still on appeal. Yes. Should we wait for that? That's a good question. I don't think so, Your Honor. I think what we should be doing is having reversal of judge. Shouldn't these things be litigated in those courts? Whether Dane should get compensated, whether his fees are proper, whether he should be sanctioned? How does that get decided here? That's an excellent question, and it goes to the fact that Joanne, who was, in fact, the person for whom this whole establishment is in New York now, she is in New York and she has been found to be competent. Shouldn't someone be going in front of the Colorado Court and say, she's now in New York, you should give up this conservatorship? I mean, why should we intrude in that? I think it's not an intrusion. I think it's enforcing New York law, which you have the power to do, by saying there are damages here that Dane caused by maintaining this conservatorship when it was, in fact, in New York court, said she's competent. Okay, so the POD disclaimer was held by the Denver Probate Court to be void in 2023. You're appealing that right now? Yes. And when is that going to get decided? Can you give us a... You know, I am not part of, I'm not representing... Okay, what do you know? I mean, can you tell us anything about it? I can tell you that the briefing has been interrupted. It's been on a continuance, and I think the briefing is about to start now, but I really... Are they waiting for us, or... No, I don't believe they're waiting for you, Your Honors. I think that the appellants are eager for this court to give them an opportunity to prove their damages. And so, where are the funds now, then? Are they in the trusts? They are still in the trusts. That's right. And they're still in the trusts because, basically, the appellants were successful in an arbitration before the FINRA to... So how have they been damaged if the funds are still in the trusts? Because there is fundamental damage to the trusts, and the trusts now have creditors. The trusts... Monies have been actually taken out of the trust before the freeze was implemented, and... And some court allowed those funds to be taken out of the trust? Yes. Why isn't this issue being litigated in those courts? I mean, the argument should be the funds should not have been permitted out, or there should be an appeal, or is that all pending somewhere? Your Honor, because... Are there really 18 cases? No longer. But because this case focuses on the misconduct of Dane, a trustee Dane, that was never the subject of any of the Colorado cases. Dane's conduct was not something before the courts. No court except the district court in the Southern District of New York made a finding that Dane breached his fiduciary duties and was responsible for a whole series of misconduct. What the court missed, the district court missed, is you can't find all of this misconduct without finding inherently damages to these trusts. It makes no sense. For example, the court found that there was standing before the... when the case was filed, because they had made sufficient allegations that there were damages to the trusts. And then, because Dane was successful, because Dane had persuaded and breached his fiduciary duties and was guilty of all this misconduct, which the district court found that, in fact, there could be no damage. It doesn't make any sense. There has to be a damage, and we've pointed to very specific things. Removal of monies from the trust. The efforts to reverse the disclaimer. It is, in fact, Joanne who was also suffering a damage because the conservatorship continues in Colorado when she lives in New York and has resided in New York, and a New York case has found that she was competent, did not need a conservatorship. Okay, thank you. You're reserved three minutes for rebuttal. Thank you, Your Honors.  Good morning, Your Honors. Unless the court has any specific questions about the damages, I wanted to start with the cross appeal with respect to the finding of misconduct against Mr. Dane. As a prevailing party, is the harm reputational? Is that what this is about? Somewhat. I mean, it gets a little bit outside the record to understand, but Bernard Black has participated and initiated, I mean, several actions over several jurisdictions, and there's various ways in those other actions that he's used the finding. He's used this in something else. Yeah, to try to benefit the other legal causes. Because it would be unusual if there were no appeal by your opponent, right? Right. For example, if they just said, we're not going to appeal, it would be unusual for us to take up an appeal that was limited to the way a district judge got there. I understand. And it would be somewhat of a waste of our time to even pursue it, except it is- Sort of as long as you're here, we have jurisdiction, and we should go ahead and consider that issue as well. I mean, I think, yeah. And also, I think there's consequences that are significant with the collateral litigation going on. Thank you. Correct. So with respect to the misconduct finding, I mean, as I'm sure your honors are aware, I just want to kind of give a little context that Mr. Dane was in when he made the decision that he did, which Judge Ammon found to have constituted misconduct. He's the trustee of both the S&T as well as the Issue Trust. And when it came to light with the money and what Bernard Black had done, I think what happened really is that the court viewed this as, you know, kind of Mr. Dane took like this moral position that the money was taken from Joanne and needed to be returned to her because it was stolen. Wasn't that moral position against the interests of the beneficiary? I don't believe so. I don't believe so. I think Mr. Dane- His position was that they were improperly funded. I'm sorry. You said against the interest of the Issue Trust beneficiaries? Or of both. No, I don't think so. And I'll tell you exactly why. I think his moral position was irrelevant. If you look at the Issue Trust beneficiaries and how that money was, in Mr. Dane's mind, reasonably going to negatively impact them, was he has 1.5 million in the trust that's stolen. It's probably at some point going to be removed, okay? So in that, it's going to be under attack. The trust is going to have to spend money on litigation, among other things, to try to defend it when it's going to be a losing effort anyway. And in fact, I think that was reasonable, which is the standard that Mr. Dane was required to follow at the time. And now having the benefit of hindsight, that's exactly what happened. You just heard Mr. Shulman discussing the loans and encumbrances that the trust now has. The argument that the money wasn't stolen could not be made? In other words, you're assuming that indeed the money was stolen. In other words, he knew the money was going to disappear at some point anyway, and so why fight it? The juice wasn't worth the squeeze, so to speak. Couldn't a reasonable trustee have argued otherwise? I don't believe so. I think it's so obvious the money, it was so obvious that it was going to be detrimental to hang on to that money. But the district court found that he breached his duty as a trustee. So then the only question is, was the trust damaged by it? And if the money didn't get there because of his work, isn't that damage? I don't believe that is damage. And we're appealing the finding that he did breach his duty. I mean that- I understand that. Assume that there's a breach of the duty. Okay, so you want to discuss damages? I do want to discuss that, yeah. I don't understand the district court's reasoning that there wasn't any damage to the trust. His breach caused the funds not to get to the trusts. Well, the money's still in the trust. Then the theory would be that his activities in dispersing funds or trying to would come from the trust and so that would be damaged either way, wouldn't it? I don't believe so. First of all, all of those expenditures were court approved. Also, the litigation expenses, I don't- there's no reason why litigation expenses should constitute damages in this situation. That's not a normal, that's not the American rule. And there's no reason here why litigation expenses should constitute damages. There's no damages. If there's funds that are in the trust that were disbursed on account of his activities breaching his duties as trustee, how is that not damages? So I'm assuming what you're appealing, so just work with me on that.  But then there is some measure of damages, whether how much of it or you know, how it's calculated is a different question. I think if you look at the nature of those expenditures, they don't qualify as damages. That's what I'm saying. Okay, but isn't that a merits question about what goes in and what goes out, not- the district court's reasoning, as I understood it, was that the money shouldn't have been there and so there couldn't be damages as a theoretical matter. I mean, that's certainly true. In the event that there actually is money eventually removed, as your honors pointed out, the Denver probate courts have already ruled that the money shouldn't have been in there in the first place. So there's no even theoretical possibility that the issue trust participants could have sustained any damages. I have a separate question about that. So what the Denver court held was that Black should be penalized via the surcharge of the amount that he civilly stole, right? But then also now the district court has said that the money in the issue trust should not be there. That should go to the S&T trust. Isn't that kind of the double recovery for the S&T trust then? Well, the surcharge was more rooted in- I mean, it was a $4.5 million. Yeah, I guess there's the penalty part of it too, the trouble part of it. Right, right. But just in terms of the amount, the principal amount, is the $1.5 million. And then also by taking the funds out of defunding, I think, is what's supposed to happen, the issue trust transferring to the S&T trust. Isn't that a double recovery for- I understand what Your Honor is saying. I actually- this hadn't occurred to me before. But if you think about it, I don't see how that would be to the detriment of the plaintiffs in this case. I can see that as an argument for Bernard Black to why maybe his surcharge should be discounted. I don't know what it's an argument for. It's just confusing to me. It seems wrong. I understand. But I mean- The funds are still in the trusts, right? But some money has been paid out already from the trusts? Yes? From the S&T, there's been payments made to professionals as authorized by the Denver Probate Courts. And why are those payments not injury to the trust? What the court has held is that they can constitute- Do the plaintiffs have an interest in the S&T? Technically, they are remainder beneficiaries. So that's the hook that they've used. But what the court has held is that they qualify as litigation expenses, which aren't typically considered cognizable damages. So the disbursements from the S&T were approved by the Denver Court? Correct. Was that appealed? Everything's been appealed, yes. And what's the status of that? All of those expenditures have been upheld.  Yeah. So some court has ruled that they were appropriate expenditures? Correct. And- Multiple courts. Can we then hold that those expenditures are damages? Or would that be inconsistent with the rulings of the Denver Courts? Or could they still be theoretically damages, even though they were approved by the Denver Courts? To give the plaintiff the benefit of the doubt, the appellant, excuse me, I understand how if a judge ruled that they were appropriate in the Denver Court, that could theoretically be caused by Dane. But the court is ruling that the nature of the expenditures does not qualify as damages in this lawsuit because of what they are. And they don't have anything else to point to. If there's nothing else, I'm about out of time anyway. Thank you. Thank you, counsel. Thank you. We'll hear a vote. I'd like to address that, I think, excellent question right out of the box. Nowhere in the Colorado system, the Colorado courts, either DPC or the appellate courts, considered whether trustee Dane breached his fiduciary duties. It was simply not part of the record there. It was not something that was considered. My question is this, if the courts have approved these disbursements, can we hold that they somehow are damages here? Or is that inconsistent with the judicial approval of those disbursements? I was about to try and answer that question. It is not inconsistent to rule on this as a damage, even though the Colorado court said you could take this money out. Because what was not before them was whether this trustee was acting within his fiduciary duties to take that money out. And I think another evidence of the lack of moral position by trustee Dane was his refusal to accept what we have called the transfer offer. In other words, trustee Black, back in 2015, agreed to transfer the issue trust $1.5 million, which he thought was appropriate in the issue trust, back to the S&T. So at that time, the S&T would have been fully three-thirds funded. And there would have been no reason for any continuing litigation. There would have been no reason to take money out of the S&T. The question of whether the funds, which are now in the trust, whether they are properly there, or whether they belong in the conservatorship, that issue has not been resolved, right? Not finally. That is correct, Your Honor. If the final determination is that the money belongs to the conservatorship, would there be any damages? Yes. Or would this disbursement question be mooted? Because in any event, the money is in the conservatorship. I don't think any of those questions would be mooted. Again, because the focus is on the actions of Trustee Dane. The court in Colorado is not going to consider whether this particular trustee acted within his responsibilities not to injure the trusts. And that is the fundamental issue. If there is no injury, there's no breach of fiduciary duty claim. And I'm just trying to figure out where the injury is. Well, there would still be injuries to the trust because throughout this 10-year period in which Dane was advocating and manipulating the guardianship and the conservatorship to take money out and to restrain the trust from being fully funded, restrain the beneficiaries from enjoying it. For example, during this 10-year period, Joanne was not able to take monies out of the trust. Let me ask you this. You're running out of time. When will there be a final resolution of where the money belongs? Any idea? And which court has that question? And any idea when we might have an answer? I should know this, but I'm afraid I really don't. But yes, the appeal is going to be made to the Colorado Court of Appeals. And however long it takes them to decide, if past history is any example, it will take some time. It will take more than a year. And then potentially, is that the highest court or is there a Supreme Court? There is a Supreme Court. Potentially, it could go to the Supreme Court. Well, it's a certiorari jurisdiction, so that's a good question. I don't know. Okay. Thank you. Thank you, Your Honors. Thank you, counsel. Thank you both. We'll take the case under advisement.